**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BIANCA NAJERA, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. |
| | ) | |
| CORNERSTONE BUILDING | ) | |
| BRANDS SERVICES, INC., | ) | JURY TRIAL |
| and MBCI, INC., | ) | DEMANDED |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Bianca Najera ("Plaintiff" or "Ms. Najera"), by and through undersigned counsel, and files this, her Complaint for Damages, showing the Court as follows:

## NATURE OF COMPLAINT

1.    Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Cornerstone Building Brands Services, Inc. ("Cornerstone"), and MBCI, Inc. ("MBCI") (collectively "Defendants") for violations of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e ("Title VII") and certain applicable state law claims.

## PARTIES

2.    Plaintiff is a citizen of the United States of America and resident of the State of Georgia.

3.    Cornerstone was formed from the November 2018 merger of NCI Building Systems, Inc. ("NCI") and Ply Gem Parent, LLC.

4.    Cornerstone is a Delaware corporation with its principal place of business in North Carolina.

5.    Cornerstone may be served with process by delivering a copy of the summons and complaint to its corporate secretary, located at 2280 Monier Avenue, Lithia Springs, GA 30122.

6.    At all times relevant, NCI and then Cornerstone were licensed to conduct business within this district.

7.    MBCI is a Texas corporation with a principal place of business in Texas.

8.    MBCI is not registered with the Georgia Secretary of State or authorized to conduct business in the State of Georgia.

9.    During all times relevant hereto, Defendant has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

10.   During all times relevant hereto, MBCI has employed fifty or more employees within a 75-mile radius of Plaintiff's employment.

11.   Cornerstone is now and, at all times relevant hereto, has been employed fifteen (15) or more employees for the requisite duration under Title VII.

12.   MBCI is now and, at all times relevant hereto, has been employed fifteen (15) or more employees for the requisite duration under Title VII.

## JURISDICTION AND VENUE

13.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of the FMLA.

14.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises out of the FMLA.

15.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which arises out of Title VII.

16.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count IV of this Complaint, which arises out of Title VII.

17.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count V of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

18.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VI of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

19.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VII of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

20.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VIII of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

21.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count IX of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

22.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count X of this Complaint, which arises out of the same nucleus of operative facts as Counts 1-IV.

23.    This Court has specific personal jurisdiction over Cornerstone because the unlawful employment practices herein were committed within the Atlanta Division of the Northern District of Georgia.

24.   This Court has specific personal jurisdiction over MBCI because the unlawful employment practices herein were committed within the Atlanta Division of the Northern District of Georgia.

25.   Venue is appropriate in this Court because the unlawful employment practices herein were committed within the Atlanta Division of the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURES

26.   Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2022; the EEOC issued its Notice of Right to Sue on August 29, 2022.

27.   Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

28.   Plaintiff is a woman.

29.   Plaintiff is a lesbian.

30.   Plaintiff worked for Defendant, as a Machine Operator, from August 24, 2018, through December 2020 and returned in on or about April 26, 2021, at its 2280 Monier Avenue, Lithia Springs, GA 30122 location.

31.    The factory where Plaintiff worked was branded with the MBCI logo.

32.    Plaintiff's employment notices and paperwork had either the NCI logo or the Cornerstone logo.

33.    Plaintiff's employment notices did not have the MBCI logo.

34.    After Plaintiff's return to work on April 26, 2021, she was subjected to discriminatory comments related to her gender by male employees.

35.    After Plaintiff's return to work on April 26, 2021, she was subjected to discriminatory comments related to her sexual orientation by male employees.

36.    On or about August 1, 2021, Andrew Seboalk ("Seboalk") was Plaintiff's direct supervisor.

37.    On or about August 1, 2021, Seboalk notified Plaintiff that he did not want to have a woman on his line.

38.    On or about August 1, 2021, Seboalk stated that women were not capable of running the line.

39.    On or about August 1, 2021, Mr. Seboalk removed Plaintiff from his line.

40.    From April 2021 to August 2021, multiple of Plaintiff's co-workers made comments to her that "Gay people are the reason the world is messed up."

41.    In August 2021, the relevant plant manager was Johnathan Cruz ("Cruz").

42.  In August 2021, Plaintiff informed Cruz of Seboalk's comments detailed in Paragraphs 37-38.

43.  In August 2021, Plaintiff reported to Cruz about the change in Plaintiff's assignment detailed in Paragraph 39.

44.  Cruz told Plaintiff that the comments reported were Plaintiff's fault for working in a "hostile male environment."

45.  In August 2021, Plaintiff reported the conversation detailed in Paragraphs 41-43 to HR.

46.  Human resources notified Plaintiff that they would investigate her complaints.

47.  On or about September 1, 2021, a meeting occurred regarding Plaintiff's HR complaint.

48.  Plaintiff attended the meeting referenced in Paragraph 47.

49.  Human Resources representatives attended the meeting referenced in Paragraph 47.

50.  Seboalk attended the meeting referenced in Paragraph 47.

51.  Cruz attended meeting referenced in Paragraph 47.

52.  Someone named Nikia (unknown last name) attended the meeting referenced in Paragraph 47.

53.   Chris Martin ("Martin") attended the meeting referenced in Paragraph 47.

54.   Martin was a Superintendent.

55.   Someone named Nakia (unknown last name) attended the meeting referenced in Paragraph 47.

56.   During that meeting, Plaintiff again reported discriminatory comments and treatment she received from her male supervisors and male co-workers.

57.   Cruz once again told Plaintiff that the reason of her differential treatment was her choice to work in male "hostile male environment."

58.   Defendant refused to further investigate Plaintiff's complaints or take any other actions.

59.   The harassment and discrimination did not stop.

60.   On or about September 2, 2021, Plaintiff suffered an injury at work.

61.   While she was working the oil spilled on her legs.

62.   As a result, Plaintiff suffered an allergic reaction.

63.   Immediately after the incident, Plaintiff told Seboalk about her injury.

64.   Plaintiff asked Seboalk if she could change her pants or take a shower immediately because she experienced a severe reaction on her legs.

65.   Instead of addressing Plaintiff's request, Seboalk, just laughed at her and made a comment "look, Bianca needs to take her pants off."

66.  Seboalk told Plaintiff that there was no shower available.

67.  Seboalk told Plaintiff that he did not have any pants for Plaintiff to change.

68.  Plaintiff drove home to take a shower.

69.  Because of the delay in removing stained pants, Plaintiff suffered a harmful allergic reaction akin to a chemical burn.

70.  Because of the delay in Plaintiff showering, Plaintiff suffered a harmful allergic reaction akin to a chemical burn.

71.  When Plaintiff returned to work, Cruz asked her why she did not use the men's truckers' showers, which were available.

72.  Plaintiff informed Cruz that Seboalk told her the plant did not have any showers.

73.  Defendants had knowledge the oil Plaintiff was working with may cause her a harmful reaction.

74.  On a prior occasion, the same oil caused Plaintiff a similar reaction when it dropped on her arm.

75.  During the prior incident, Plaintiff notified her supervisors that she could not continue working with this type of oil and asked to work with an alternative product used in Defendants' plant.

76.    Defendants ignored Plaintiff's request and made her continue working with the same oil.

77.    Plaintiff was not provided with any special protective equipment when dealing with the oil.

78.    Around the end of December 2021, Plaintiff experienced instances of sexual harassment from a new employee of Defendants, named Nate (last name unknown).

79.    The sexual harassment continued from the months of December 2021 to March 14, 2022.

80.    Nate knew about Plaintiff's sexual orientation because Plaintiff told him that she was married to the woman.

81.    When Nate discovered Plaintiff's sexual orientation, his behavior worsened.

82.    Nate made unwanted comments to Plaintiff in the presence of several male employees.

83.    On multiple occasions, Nate said to Plaintiff, "I'll make you straight with this dick."

84.    On multiple occasions, Nate said to Plaintiff, "I am wondering how you would look in a dress."

85. On multiple occasions, Nate said to Plaintiff, "I would do all kind of different things to you if I had you."

86. On multiple occasions, Nate said to Plaintiff, "I would kidnap you."

87. Nate made similar comments to Plaintiff on daily basis.

88. On several occasions, Nate followed Plaintiff to her car when Plaintiff attempted to leave work.

89. When Nate followed Plaintiff to her car, he would say that he wanted to "take her out for a night."

90. On numerous occasions, Nate would get Plaintiff's attention, put two fingers in a "V" to his lip, stick his tongue through his fingers, and wink at Plaintiff.

91. Nate's harassment of Plaintiff progressively got worse over time.

92. On or about January 9, 2022, Nate was engaged in unwanted touching of Plaintiff.

93. On January 9, 2022, Nate and Plaintiff worked together on the same shift.

94. Nate's shift was from 6:00 am to 4:30 pm.

95. Plaintiff's shift was from 7:00 am to 5:00 pm.

96. On January 9, 2022, Plaintiff went to help on a bundle line.

97. Nate was working the bundle line.

98. The bundle line was managed by Seboalk.

99.    When Plaintiff bent over to pull the bundle, Nate said, "I'm going to hug you."

100.   Plaintiff responded, "Do not touch me!"

101.   Nate grabbed Plaintiff's hips and pressed his penis against Plaintiff's rear and groin.

102.   Nate began rubbing his penis against Plaintiff's groin.

103.   Nate continued rubbing his penis against Plaintiff until Plaintiff was able to push him and run away.

104.   Seboalk was in the same room with Plaintiff and Nate during the incident detailed in Paragraphs 92-103.

105.   Seboalk observed the incident detailed in Paragraphs 92-103.

106.   Seboalk did not intervene in the incident detailed in Paragraphs 92-103.

107.   Seboalk did not discipline or report Nate.

108.   On January 10, 2022, Plaintiff reported the incident detailed in Paragraphs 92-103 to Human Resources.

109.   On January 10, 2022, Plaintiff reported that Seboalk had directly witnessed the incident detailed in Paragraphs 92-103 and failed to take any action.

110.   Human Resources never investigated Plaintiff's sexual harassment complaint.

111.   The sexual harassment was severe or pervasive, altering the terms and conditions of Plaintiff's employment.

112.  Despite Plaintiff's complaints, Defendant chose not to take any steps to stop the harassment, continuing to employ Nate, notwithstanding its knowledge of his propensity to harass its employees.

113.  Defendant was aware of Nate's sexual harassment conduct.

114.  Defendants failed to take appropriate remedial actions to correct the sexual harassment.

115.  On or about January 24, 2022, Plaintiff notified Human Resources and Mr. Seboalk that she had been exposed to COVID.

116.  Plaintiff was sick with COVID for three (3) weeks.

117.  On or about February 14, 2022, Plaintiff returned to work.

118.  Human Resources asked her to compete FMLA paperwork.

119.  The FMLA paperwork had the Cornerstone logo on it.

120.  The FMLA paperwork did not have the MBCI logo on it.

121.  Plaintiff followed Human Resources instructions and submitted FMLA paperwork and a positive COVID test.

122.  On February 18, 2022, Defendants refused to grant Plaintiff's FMLA request to which she was entitled, stating that Plaintiff failed to submit supporting medical documentation and that Plaintiff was not eligible for FMLA due to length of service.

123.   Plaintiff attempted to appeal the decision to deny her FMLA.

124.   On March 14, 2022, a meeting occurred regarding Plaintiff's FMLA leave.

125.   Seboalk attended the meeting referenced in Paragraph 124.

126.   Martin attended the meeting referenced in Paragraph 124

127.   Plaintiff attended the meeting referenced in Paragraph 124.

128.   During the meeting referenced in Paragraph 124, Seboalk informed Plaintiff that her request for FMLA leave was denied because Plaintiff had not worked for Defendants for a full calendar year.

129.   During the meeting referenced in Paragraph 124, Seboalk informed Plaintiff that Plaintiff had violated Attendance Policy by reaching 8 attendance points.

130.   During the meeting referenced in Paragraph 124, Plaintiff was informed her employment was being terminated.

131.   Had Plaintiff's FMLA leave been granted, Plaintiff would not have accrued the points allegedly resulting in her termination.

132.   At the time of Plaintiff's request for FMLA leave, Plaintiff had worked for Defendants for approximately 163 weeks.

133.   At the time of Plaintiff's request for FMLA leave, Plaintiff had worked more than 1250 hours within the prior 52 weeks.

**CLAIMS FOR RELIEF**
**COUNT I: FMLA INTERFERENCE**

134.   Plaintiff reasserts and incorporates Paragraphs 1-133 as if set forth fully herein.

135.   Cornerstone is an "employer" as defined by the FMLA.

136.   MBCI is an "employer" as defined by the FMLA.

137.   Plaintiff was an eligible employee under the FMLA, as shown in Paragraphs 132-133.

138.   Plaintiff worked at least 1250 hours for Defendant Cornerstone within the 12 months preceding her request for medical leave pursuant to the FMLA.

139.   Plaintiff was employed by Defendant Cornerstone for more than 12 months.

140.   Plaintiff was employed by Defendant Cornerstone at a worksite with 50 or more employees within 75 miles of that worksite.

141.   Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

142.   Plaintiff had a serious medical condition that required more than three days of leave.

143.   Plaintiff had a "serious medical condition" as defined by the FMLA.

144.   Cornerstone received notice of Plaintiff's need for protected medical leave for her own serious medical condition on or about January 24, 2022.

145. MCBI received notice of Plaintiff's need for protected medical leave for her own serious medical condition on or about January 24, 2022.

146. Defendants improperly denied Plaintiff's request for protected medical leave, resulting in her termination.

147. Defendants interfered with rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

148. The effect of Defendants' actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits.

149. As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant Cornerstone's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

## COUNT II: FMLA RETALIATION

150. Plaintiff reasserts and incorporates Paragraphs 1-149 as if set forth fully herein.

151. Cornerstone is an "employer" as defined by the FMLA.

152. MBCI is an "employer" as defined by the FMLA.

153. Plaintiff was an eligible employee under the FMLA, as shown in Paragraphs 132-133.

154. Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

155. Plaintiff was employed by Defendant for more than 12 months.

156. Plaintiff was employed by Defendant Cornerstone at a worksite with 50 or more employees within 75 miles of that worksite.

157. Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

158. Plaintiff had serious medical conditions that required her to take more than three days of leave.

159. Plaintiff had a serious medical condition as defined by the FMLA.

160. Cornerstone received notice of Plaintiff's need for protected medical leave for her own serious medical condition on or about January 24, 2022.

161. MCBI received notice of Plaintiff's need for protected medical leave for her own serious medical condition on or about January 24, 2022.

162. Despite Plaintiff's eligibility for FMLA leave, Defendant Cornerstone still terminated Plaintiff's employment.

163. On March 14, 2022, Defendant terminated Plaintiff.

164.   Defendants terminated Plaintiff because she applied for FMLA leave.

165.   Defendants' termination of Plaintiff's employment was causally related to her attempt to exercise her rights to protected medical leave pursuant to the FMLA.

166.   Defendants' termination of Plaintiff's employment for alleged policy violations constitutes unlawful retaliation against Plaintiff for her attempt to exercise her rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

167.   As a direct and proximate result of Defendants' unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

168.   Plaintiff reasserts and incorporates Paragraphs 1-166 as if set forth fully herein.

169.   Plaintiff is a member of a protected class, as shown in Paragraphs 28-29.

170.   Plaintiff suffered harassment on the basis of sex in violation of Title VII, as shown in Paragraphs 36-39, 44, 60-77, and 78-103.

171.   Plaintiff suffered harassment on the basis of sexual orientation in violation of Title VII, as shown in Paragraphs 44, 60-77, and 78-103.

172. Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her gender in violation of Title VII.

173. Defendants have willfully and wantonly disregarded Plaintiff's rights, and their discrimination against Plaintiff was undertaken in bad faith.

174. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her gender.

175. As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

176. Accordingly, Defendants are liable for the damages Plaintiff has sustained as a result of Defendants' unlawful discrimination.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

177. Plaintiff reasserts and incorporates Paragraphs 1-175 as if set forth fully herein.

178. The reports in Paragraphs 42-43 and 45 constituted protected activity under Title VII.

179.   Participating in the meeting detailed in Paragraphs 47-56 constituted
       protected activity under Title VII.

180.   Plaintiff was subjected to a heightened risk of injury, and did sustain such
       injury, as shown in Paragraphs 60-77.

181.   The close temporal proximity between the protected activity referenced in
       Paragraphs 178-179 and the injury referenced in Paragraph 180 suggest a
       retaliatory motive.

182.   The report detailed in Paragraphs 108-109 constituted protected activity
       under Title VII.

183.   Plaintiff suffered the adverse action of denial of leave, as detailed in
       Paragraphs 122 and 128.

184.   Plaintiff suffered the adverse action of termination, as detailed in Paragraph
       130.

185.   The close temporal proximity between the protected activity detailed in
       Paragraph 182 and the adverse actions detailed in Paragraphs 183-184
       suggest a retaliatory motive.

186.   Defendants willfully and wantonly disregarded Plaintiff's rights, and
       Defendants' retaliation against Plaintiff was undertaken in bad faith.

187.   Accordingly, Defendants are liable for the damages Plaintiff has sustained as a result of Defendants' unlawful retaliation.

## COUNT V: NEGLIGENT FAILURE TO PREVENT SEXUAL HARASSMENT
## (Georgia State Law)

188.   Plaintiff reasserts and incorporates Paragraphs 1-187 as if set forth fully herein.

189.   1Defendants had a duty to Plaintiff to prevent sexual harassment in the workplace.

190.   By virtue of the aforementioned conduct by Nate, detailed in Paragraphs 78-103, and the failure of Defendants to prevent sexual harassment, Defendants failed to use ordinary care to prevent sexual harassment in the workplace, causing Plaintiff to be sexually harassed.

191.   Defendants are thus liable to Plaintiff for damages.

## CLAIM VI: NEGLIGENT AND WRONGFUL HIRING, RETENTION AND SUPERVISION
## (Georgia State Law)

192.   2Plaintiff reasserts and incorporates Paragraphs 1-191 as if set forth fully herein.

193.   Defendants knew, or in the exercise of ordinary diligence, should have known, of the propensity of its employees, including Nate, to engage in

sexually offensive conduct toward other employees, and Plaintiff in particular.

194.   3Defendants nevertheless failed and refused to act to protect Plaintiff from sexual harassment.

195.   Defendant Cornerstone is thus liable to Plaintiff for all of the damages sustained as a result.

## COUNT VII: RATIFICATION
## (Georgia State Law)

196.   Plaintiff reasserts and incorporates Paragraphs 1-195 as if set forth fully herein.

197.   Defendants knew, or in the exercise of ordinary diligence, should have known of the propensity of its employees, including Nate, to engage in sexually offensive conduct toward other employees/applicants, and Plaintiff in particular.

198.   Having knowledge of the male employees' sexually offensive and tortious conduct, including a battery witnessed by a supervisor, Defendants permitted the conduct to continue and took no action to stop its employees, including Nate.

199. As shown in Paragraphs 44 and 57, management – on behalf of Defendants – supported and ratified the actions of male employees and blamed Plaintiff for the mistreatment she suffered.

200. Defendants failed to take action to protect Plaintiff from Nate despite possessing knowledge of his sexually offensive conduct.

201. As a result, Defendants have ratified the sexually offensive conduct and are subject to liability for that conduct.

## COUNT IX:  ASSUMPTION OF DUTY
### (Georgia State Law)

202. Plaintiff reasserts and incorporates Paragraphs 1-201 as if set forth fully herein.

203. Defendants voluntarily assumed and undertook the duty to prevent and eliminate sexual harassment in the workplace, imposing upon them a legal duty to prevent and eliminate sexual harassment in the workplace in a non-negligent manner.

204. Upon information and belief, Defendants assumed these duties by, *inter alia*, adopting sexual harassment policies in which they undertake to take certain steps to prevent and eliminate sexual harassment in the workplace.

205. The employer is in the best position to end sexual harassment in its workplace.

206.  By implementing a sexual harassment policy and disciplining employees for violations of the policy, employers, including Defendants, have the ability to prevent and correct workplace sexual harassment.

207.  Employees depend on a harassment-free working environment.

208.  Defendants voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

209.  Defendants delegate authority to supervisors over employees.

210.  Sexual harassment should not be a risk of employment.

211.  Sexual harassment is socially harmful behavior.

212.  Plaintiff suffered harm due to her reliance on Defendants to prevent sexual harassment.

213.  Plaintiff relied to her detriment on the fact that Defendants undertook the duty to prevent sexual harassment.

214.  Defendants' failure to exercise reasonable care increased the risk of harm to Plaintiff and other employees.

215.  Defendants' failure to exercise reasonable care caused Plaintiff to suffer harm from the sexual harassment.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Georgia State Law)

216.   4Plaintiff reasserts and incorporates Paragraphs 1-215 as if set forth fully

herein

217.   Nate's conduct was extreme and outrageous.

218.   Nate's conduct caused severe emotional distress to Plaintiff.

219.   Defendants allowed Plaintiff to be subjected to sexual harassment and failed

to take any corrective action.

220.   Defendants intended to inflict severe emotional distress or knew that it was a

high probability that sexual harassment inflicted upon Plaintiff would do so.

221.   Despite their knowledge of Nate's sexual harassment and battery,

Defendants either retained Nate or took no action to prevent Plaintiff from

further harm.

222.   In addition, Defendants retaliated against Plaintiff after her complaint of

sexual harassment by ending her assignment.

223.    This retaliation constitutes intentional, extreme/outrageous conduct by

Defendants.

224.   Defendants are liable for all general and special damages proximately

resulting from the intentional infliction of emotional distress.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff judgment as follows:

(a)    General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)    Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(c)    Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)    Reasonable attorney's fees and expenses of litigation;

(e)    Trial by jury as to all issues;

(f)    Prejudgment interest at the rate allowed by law;

(g)    Declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights;

(h)    Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendants from further unlawful conduct of the type described herein; and

(i)    All other relief to which he may be entitled.

Respectfully submitted the 28th day of November, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**
*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184
Daria Korsun
Georgia Bar No. 128639
Provisionally Admitted Attorney
*Attorneys for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353-0092
(404) 214-0120
(404) 445-1018
(404) 214-0125 facsimile
micah@justiceatwork.com
daria@justiceatwork.com

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 28th day of November, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiff certifies that the within and foregoing

**COMPLAINT** was prepared using Times New Roman, 14-point font in

accordance with LR 5.1(B).

This 28th day of November, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184